# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| MILTON SCHULZ, Individually and on behalf of all others similarly situated, | CASE NO. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| INFOGROUP INC., | |
| Defendant. | |

Plaintiff, MILTON SCHULZ ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendant, INFOGROUP INC. ("Defendant" or "Infogroup"), on behalf of himself and all others similarly situated and, except for those allegations pertaining to Plaintiff or his attorneys (which are based on personal knowledge), alleges the following on information and belief:

## NATURE OF THE CASE

1. Plaintiff brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed telemarketing calls to cellular telephones without the "prior express written consent" of the called party. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200 (f) (1), (12).

4. Plaintiff is a private individual as well as the owner and operator of a chiropractic facility located in Salina, Kansas.

5. Defendant Infogroup describes itself as a "big data, analytics and marketing services provider that delivers best in class data-driven customer-centric technology solutions" and "provides both digital and traditional marketing channel expertise that is enhanced by access to our proprietary data on 245MM individuals and 25MM businesses, which is distributed real-time to our clients."[1]

6. This case challenges Defendant's practice of initiating autodialed telemarketing calls to cellular telephones without the prior express written consent required by the TCPA. *See* 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

7. On January 22, 2019, January 29, 2019, January 31, 2019, February 14, 2019, February 21, 2019, February 26, 2019, March 1, 2019, and March 5, 2019, Defendant initiated autodialed telemarketing calls to Plaintiff at (785) XXX-7777 ("Plaintiff's Phone Number"). Plaintiff's Phone Number is Plaintiff's cellular phone number as well as the number he uses for his chiropractic business.

8. Plaintiff sent letters to Defendant on January 22, 2019, and February 21, 2019, and sent an e-mail to Defendant on or about March 1, 2019, demanding Defendant cease its attempts to contact Plaintiff and informing Defendant that its conduct violated the TCPA. Despite Plaintiff's repeated demands, Defendant continued to contact Plaintiff.

9. At no time prior to Defendant's first contact, and at no time after, did Plaintiff give express written consent to receive autodialed phone calls on his cellular phone from Defendant.

---

[1] *About*, Infogroup, https://www.infogroup.com/about-infogroup (last visited April 1, 2019).

2

10. Each time Defendant attempted to contact Plaintiff, Defendant utilized an "automatic telephone dialing system" ("ATDS").

11. Plaintiff seeks class-wide relief against Defendant for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means of obtaining redress for Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

12. Defendant's practice caused actual harm to Plaintiff and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

## JURISDICTION & VENUE

13. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under 47 U.S.C. § 227, a federal statute.

14. This Court has personal jurisdiction over Infogroup because it is headquartered within the State of Texas and is registered to conduct business within the State of Texas.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs personnel in this District and a substantial portion of the actions and omissions giving rise to the claims alleged in this Complaint substantially occurred in this District.

## PARTIES

16. Plaintiff, Milton Schulz, is a resident of the State of Kansas and the owner of a chiropractic facility located in Salina, Kansas. Plaintiff's chiropractic facility is a sole proprietorship.

17. Defendant, Infogroup Inc., is a Delaware corporation registered to do business in the State of Texas. Defendant can be served via its registered agent, C.T. Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

## BACKGROUND AND ENFORCEMENT OF THE TCPA

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry and protect consumers of telephone services. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19. When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

20. The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *See The FCC's Push to Combat Robocalls & Spoofing*, FCC, https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited May 12, 2019).

## THE TCPA PROHIBITS AUTOMATED TELEMARKETING CALLS

21. The TCPA requires prior express written consent for all autodialed telemarketing calls to cellular telephone numbers. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200 (f) (1), (12).

22. "Prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200 (f) (8).

23. The agreement in writing:

> shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200 (f) (8) (i) (A).

24. According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (9).

25. "The term advertisement means <u>any</u> material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200 (f) (1) (emphasis added).

26. "The term telemarketer means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (11).

27. "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200 (f) (12).

## FACTUAL ALLEGATIONS

### A. *Defendant routinely initiates autodialed calls as part of its ongoing advertising and telemarketing campaigns.*

28. On January 22, 2019, Defendant initiated an unsolicited call to Plaintiff's Phone Number using an automatic telephone dialing system ("ATDS"), as defined by 47 U.S.C. § 227(a)(1). Defendant contacted Plaintiff from phone number (402) 836-3870 ("Defendant's ATDS Phone Number"). *See* Exhibit A.[2]

29. Plaintiff had not, prior to this initial call from Defendant, expressly consented in any manner to allow Defendant to contact him.

30. On January 22, 2019, Plaintiff attempted to contact Defendant at Defendant's ATDS Phone Number for the purpose of demanding Defendant cease its attempts to contact and solicit Plaintiff at Plaintiff's Phone Number, but was unable to speak with a human being.

31. Instead, Plaintiff's call to Defendant's ATDS Phone Number led directly to a prerecorded message that states:

> You have reached Infogroup. Please visit www.expressupdate.com to claim and update your business listing so the information about your business is accurately

---

[2] On December 30, 2012, Plaintiff Milton Schulz registered his mobile number, (785) XXX-7777 ("Plaintiff's Phone Number"), with the National Do Not Call Registry for the purposes of preventing unsolicited telephone calls. *See* Exhibit B. At all times relevant to this Complaint, Plaintiff's Phone Number was registered with the National Do Not Call Registry.

6

displayed to users of online and mobile search devices. [new voice appears] You cannot leave a message for [another new voice appears] Express update.

32. Defendant's unsolicited call to Plaintiff sought to encourage him to provide or update contact information related to his chiropractic business so Defendant could include it within one or more database(s) Defendant may sell to its subscribers, and so its subscribers could advertise and tele-market to Plaintiff to sell Plaintiff their goods and services. Expressupdate, www.expressupdate.com ("Make Sure Your Customers Can Find You" … "Build Your Profile" and "Grow Your Business") (last visited May 12, 2019).

33. Defendant uses its autodialed calls to Plaintiff and class members in order to encourage and induce the use of its "Express Update" services. Defendant advertises "Express Update makes it easier for customers to find and reach your business on the internet – and it's all FREE! It's simple: Search Express Update for your business listing and make sure the information is correct. Then we will automatically send your correct information to our partners…." *Why Use Express Update?*, Expressupdate, https://www.expressupdate.com/why_express_update (last visited May 12, 2019).

34. Express Update also advertises itself as "part of the Infogroup family." *Id.* As "part of the Infogroup family" Express Update "allows you to put the power of Infogroup's data expertise behind your online business listing. Our company of nearly 2,000 employees: Has been providing industry leading data since 1972. … When you update your business listing with Express Update, you make it easier for millions of consumers to find you." *Id.* Courts have found that communications which offer future advertising opportunities qualify as unsolicited advertisements. *See Matthew N. Fulton, D.D.S., P.C. v, Enclarity, Inc.*, 907 F.3d 948, 955 (6th Cir. 2018) ("[W]e find that Fulton has adequately alleged that the fax Fulton received was an

unsolicited advertisement because it served as a commercial pretext for future advertising opportunities.").

35.     Defendant's autodialed calls were a pretext to obtain recipients' participation in Defendant's proprietary database, access to which Defendant makes available to consumers and other businesses. Embedded within the https://www.expressupdate.com/why_express_update website is the weblink: https://www.infousa.com/lists/mailing-lists/, which states: "Find and reach new customers using our targeted mailing lists. Need mailing lists for your next marketing campaign? InfoUSA makes finding new customers a snap. Plus, once you've identified your target audience, we have everything you need in order to design, print, and deliver your customized mailer." InfoUSA, https://www.infousa.com/lists/mailing-lists/ (last visited May 12, 2019).

36.     Defendant's website declares: "Infogroup proudly . . . Contacts over 100,000 businesses every day to verify our quality information and augment our data sets further . . . [and] leverages our proprietary platforms and technology to manage over 25 billion records in support of thousands of marketing campaigns." *About Infogroup*, Infogroup, https://www.infogroup.com/about-infogroup (last visited May 12, 2019).

37.     Defendant's autodialed calls seek to increase awareness and use of Defendant's proprietary database services and increase traffic and business to Defendant including through Defendant's websites. *See The Secret to Direct Mail Success*, InfoUSA, https://www.infousa.com/marketing/direct-mail/ (last visited May 12, 2019) ("InfoUSA can help you create a successful direct mail marketing piece instead of junk mail that ends up in the trash. … With over 45 years of experience in the mail business, we can show you ways to optimize your direct mail pieces for stronger open and response rates. To ensure maximum delivery, start

by building your mailing list. This means identifying the right audience, your best customers, and updating bad addresses.").

38. Defendant's autodialed calls promote Defendant's commercially available proprietary databases by offering its services and supposed benefits to called parties while Defendant is collecting valuable data to provide to their paying customers. In other words, there was a clear profit motive behind Defendant's autodialed calls.

### B. *Defendant's multiple contacts with Plaintiff, and Plaintiff's repeated efforts to end the harassment.*

39. On January 29, 2019, January 31, 2019, February 14, 2019, and February 21, 2019, Defendant further attempted to contact Plaintiff at Plaintiff's Phone Number. During each attempt Defendant contacted Plaintiff using the exact same ATDS number Defendant had used previously. *See* Exhibit A.

40. On February 14, 2019, and February 21, 2019, Plaintiff answered the incoming call from Defendant with the purpose of demanding that Defendant cease its attempts to contact Plaintiff. Each time Plaintiff answered Defendant's call Plaintiff he did not hear any sound and noticed the call was immediately "disconnected." Upon information and belief, the silence, pause, and near immediate subsequent disconnection is characteristic of automatic phone dialing systems. *See What is a Dialer*, Babelforce, https://www.babelforce.com/explainer/what-is-a-dialer/ ("[C]all centers may place [via automated dialing systems] more calls than they can handle, leading to silent or abandoned calls."); *see also Dropped Calls,* HostedDialer, https://support.hosteddialer.com/knowledgebase/articles/112649-dropped-calls (last visited May 12, 2019) ("If no agent is available to take the call after a specified amount of time, the [automatic] dialer will hang up on the call, resulting in a dropped call.").

9

41. On February 21, 2019, Plaintiff sent Defendant a letter demanding Defendant cease its continued attempts to contact Plaintiff. In this letter Plaintiff also informed Defendant that its calls to Plaintiff violated the TCPA. *See* Exhibit C.

42. Despite Plaintiff's written demands, Defendant again attempted to contact Plaintiff on February 26, 2019, and again on March 1, 2019. *See* Exhibit A. During each attempt, Defendant contacted Plaintiff using the exact same ATDS number Defendant had used previously. *See id.*

43. After Defendant's March 1, 2019, phone call, Plaintiff contacted Infogroup via e-mail at the e-mail address "Corporate.Communications@infogroup.com" for the purposes of further demanding Defendant cease its attempts to contact and solicit Plaintiff. *See* Exhibit D.

44. On March 1, 2019, Defendant responded to Plaintiff's e-mail communication from e-mail address "DoNotReply@infogroup.com" with the following response:

> We do apologize, but this was in our business database, and the violations you are indicating only apply to consumer data. We have removed your business from our business database and you will receive no additional calls.

*See* Exhibit D.

45. The TCPA has no "business exception" for calls to cellular phones. *See* 47 U.S.C. § 227.

46. On March 5, 2019, four days after promising that it had removed Plaintiff's Phone Number from its database, Defendant attempted to contact Plaintiff a *seventh* time. *See* Exhibit A. During this attempt Defendant again contacted Plaintiff from Defendant's ATDS Phone Number. *See id.*

47. At no time prior to Defendant's initial call on January 22, 2019, and at no time after, did Plaintiff give any form of express consent to allow Defendant to contact him.

48. Each of Defendant's unsolicited phone calls to Plaintiff's Phone Number were made via an ATDS.

49. Each of Defendant's seven unsolicited phone calls to Plaintiff's Phone Number violated the TCPA.

C. *Defendant's conduct was knowing or willful; Defendant has previously been sued for violating the TCPA.*

50. As a self-described "big data, analytics and marketing services provider" Defendant knew the TCPA regulated its conduct and that the TCPA does not provide a business-to-business exception. Notwithstanding this fact, Defendant systematically contacted Plaintiff even *after* it promised to stop.

51. Additionally, this is not the first time Defendant has been sued for violations of the Telephone Consumer Protection Act. *See* Complaint, *Alves v. Infogroup Inc.*, No. 2:16-cv-09328 (C.D. Cal. Dec. 16, 2016), attached hereto as Exhibit E. For example, on December 16, 2016, Terri Alves, a resident of California, filed a proposed Class Action suit against Defendant in United States District Court for the Central District of California alleging Defendant violated the TCPA. *See id.* Approximately 11 days after the Complaint was filed, the Complaint was voluntarily dismissed by the named plaintiff, as to prejudice against the named Plaintiff only, and without prejudice as to the rest of the class.

52. At minimum, Defendant became aware that its practices violated the TCPA on or around December 16, 2016.

53. Despite Defendant's prior knowledge of the TCPA, Defendant attempted to contact Plaintiff using an ATDS on January 22, 2019, January 29, 2019, January 31, 2019, February 14, 2019, February 21, 2019, February 26, 2019, March 1, 2019, and March 5, 2019.

11

54. *At the very least* Plaintiff's letters to Defendant on January 22, 2019, and February 21, 2019, land his e-mail communication to Defendant on March 1, 2019, complaining of Defendant's unconsented autodialed calls put Defendant on notice that its calls violated the TCPA.

55. As such, Defendant knowingly or willfully violated the TCPA no less than seven times with respect to Plaintiff.

56. Upon information and belief, Defendant has attempted to contact hundreds or thousands of additional individuals in knowing or willful violation of the TCPA.

## CLASS ALLEGATIONS

57. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated on behalf of the following Class:

> All persons in the United States (1) to whom one or more telemarking or advertising calls were initiated, (2) to their cellular telephone number, (3) placed by or on behalf of Infogroup (4) using an automatic telephone dialing system or an artificial or prerecorded voice, (5) on or after May 22, 2015; and (6) without their prior express written consent.

58. Not included in the Class is Defendant or any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; or the Judge assigned to this case, including his or her immediate family, or his or her staff. Plaintiff reserves the right to modify or amend the Class definition during the course of this litigation.

59. This action has been brought, and may be properly maintained, under Federal Rule of Civil Procedure Rule 23. The proposed Class and Class Representative satisfy the criteria of Rule 23 as outlined below.

60. Plaintiff is a member of the proposed class.

61. **Numerosity—Federal Rules of Civil Procedure 23(a)(1).** Defendant used automated technology that is capable of contacting thousands of people per day, so the potential class members number in the hundreds or thousands, at least. Individual joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The proposed class members should be identifiable from a review of Defendant's marketing documents, phone records, contact lists, and other internal documents.

62. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact which predominate over any questions which may affect individual Class members, including, but not limited to:

   a. Whether Defendant used an automatic telephone dialing system to call the cellular phones of Plaintiff and others;

   b. Whether Defendant initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

   c. Whether Defendant's alleged conduct violated the Telephone Consumer Protection Act;

   d. Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and other members of the class;

   e. Whether Class members are entitled to statutory damages, equitable relief, exemplary damages, and/or other relief; and

   f. The amount and nature of relief to be awarded to Plaintiff and Class members.

63. **Typicality—Federal Rules of Civil Procedure 23(a)(3).** Plaintiff's claims are based on the same legal theories as all other Class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular phones through the same or similar dialing system.

64. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** The above-named Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class he seeks to represent. Plaintiff has retained counsel who are well-versed and experienced in complex litigation and class action litigation, and Plaintiff and counsel intend to vigorously prosecute this action on behalf of Plaintiff and the Class. Plaintiff and his attorneys will fairly and adequately protect the interests of the Class.

65. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Injunctive and declaratory relief are appropriate because Defendant has acted or refused to act on grounds which are generally applicable to Plaintiff and Class members. Thus, final injunctive and declaratory relief, as described below, are appropriate with respect to the Class.

66. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this action; no unusual difficulties are likely to be encountered in the management and litigation of this class action. When compared to the burden and expense required to litigate each Class member's claims, each individual Class member's claims are relatively small; thus, it would be impracticable for individual Class members to seek redress for Defendant's wrongful conduct. Even if individual Class members could afford individual suits, the court system could not. Adjudication of this matter by means of a class action ensures the most efficient and time- and cost-effective resolution by providing economy of scale, presents fewer management difficulties, and provides the benefit of a comprehensive supervision and a final adjudication by a single court.

67. **Class Action Maintainable under Rule 23(b)(3).** A class action is appropriate because common questions of law and fact predominate over any individual questions affecting only individual members. Class treatment is superior to the alternatives for the fair and efficient

adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

68. **Class Action Maintainable Under Rule 23(b)(2).** By continuing to contact individuals and businesses in violation of the TCPA, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making declaratory relief an appropriate remedy for Plaintiff and the Class.

## COUNT I – VIOLATION OF THE TELPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

69. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein, and brings Count I on behalf of himself and the entire Class.

70. Defendant's acts and omissions alleged herein constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, as Defendant called the cellular telephone numbers of Plaintiff and the other Class members using an ATDS.

71. Plaintiff and the other members of the Class are entitled to an award of $500 in damages for each and every call Defendant made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. §227, by making calls, except for

emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

73. Defendant's violations were knowing or willful.

74. If the Court determines that Defendant's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of Plaintiff's counsel as counsel for the class;

D. An order awarding statutory damages of $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E. An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F. An order enjoining Defendant from engaging in the same or similar unlawful practices alleged herein;

G. An order awarding costs of suit;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Respectfully submitted,

**CLARK & McCREA**

By: /s/ *Collen A. Clark*
    **COLLEN A. CLARK**
    State Bar No. 04309100
    **JACOB L. von PLONSKI**
    State Bar No. 24098554

3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500
214-780-0501 Fax
cclark@clarkmccrea.com
eservice@clarkmccrea.com
jake@clarkmccrea.com

Timothy J. Becker (MN Bar. No. 256663)
Jennell K. Shannon (MN Bar No. 0398672)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota
612-436-1800
612-436-1801 Fax
tbecker@johnsonbecker.com
jshannon@johnsonbecker.com

Jason J. Thompson
**SOMMERS SCHWARTZ, P.C.**
2000 Town Center, Suite 900
Southfield, MI 48075
248-415-3206
248-436-8453 Fax
jthompson@sommerspc.com

Phillip A. Bock
Tod A. Lewis
**BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
312-658-5500
312-658-5555
phil@classlawyers.com
tod@classlawyers.com

*Counsel for Plaintiff and the Proposed Class*