**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**MILTON SCHULZ, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**INFOGROUP INC.,**

**Defendant.**

**CASE NO. 3:19-cv-01620-N**

**Judge David C. Godbey**

**JURY TRIAL DEMANDED**

**DEFENDANT INFOGROUP INC.'S BRIEF IN SUPPORT OF ITS**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. WHY SCHULZ'S TELEMARKETING CLAIM FAILS .......... 2**

**III. BACKGROUND .......... 3**

**IV. SCHULZ'S FACT ALLEGATIONS .......... 4**

**V. CAUSE OF ACTION AT ISSUE .......... 7**

**VI. ARGUMENTS AND AUTHORITIES .......... 7**

A. Legal Standards .......... 7

B . Infogroup's Verification Calls Were Not Telemarketing Calls. .......... 8

1. Infogroup's Verification Calls did not "constitute telemarketing" because they had no content. .......... 9

2. The context surrounding Infogroup's Verification Calls shows that they were not telemarketing calls. .......... 12

a. Obtaining Schulz's updated contact information was not telemarketing .......... 13

b. Selling Schulz's contact information was not telemarketing .......... 14

c. Inviting Schulz to sign up for Express Update was not telemarketing .......... 16

d. Infogroup's "profit motive" did not transform its calls into telemarketing .......... 17

**VII. CONCLUSION AND PRAYER .......... 19**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Caribbean Cruise Line*,
2014 U.S. Dist. LEXIS 88336 (W.D. Pa. June 23, 2014)....................................................11

*Aderhold v. car2go N.A*,
2014 U.S. Dist. LEXIS 26320 (W.D. Wash. Feb. 27, 2014)..............................................10

*An Phan v. Agoda*,
351 F. Supp. 3d 1257 (N.D. Cal. 2018).................................................................................9

*ARcare v. IMS Health, Inc.*,
2016 U.S. Dist. LEXIS 125262 (E.D. Ark. Sept 15, 2016)..................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................7

*Bennett v. GoDaddy.com LLC*,
2019 U.S. Dist. LEXIS 59766 (D. Ariz. Mar. 15, 2019).....................................................11

*Broking v. Green Brook Buick GMC Suzuki*,
2017 U.S. Dist. LEXIS 134026 (D.N.J. Aug. 22, 2017)........................................................9

*Cavazos v. Edgewood Indep. Sch. Dist.*,
400 F. Supp. 2d 948 (W.D. Tex. 2005)................................................................................16

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913 (9th Cir. 2012)................................................................................................13

*Consumer Prot. Corp. v. Neo-Tech News*,
2009 U.S. Dist. LEXIS 65093 (D. Ariz. July 16, 2009).......................................................13

*Daniel v. Five Stars Loyalty, Inc.*,
2015 U.S. Dist. LEXIS 159007 (N.D. Cal. Nov. 24, 2015)..................................................16

*Drew v. Lexington Consumer Advocacy, LLC*,
2016 U.S. Dist. LEXIS 52385 (N.D. Cal. Apr. 18, 2016)....................................................13

*Edelsberg v. Vroom, Inc.*,
2018 U.S. Dist. LEXIS 50420 (S.D. Fla. Mar. 27, 2018).....................................................15

*Freyja v. Dun & Bradstreet*,
2015 U.S. Dist. LEXIS 143866 (C.D. Cal. Oct. 14, 2015)...........................................10, 14

*Golan v. Veritas Entm't*,
788 F.3d 814 (8th Cir. 2015) ....................................................................................10

*Johnson v. The Berkley Grp., Inc.*,
2013 WL 12130296 (W.D. Tex. July 2, 2013) ....................................................................13

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ......................................................................................7

*KS Cayton, LLC v. Hobby Lobby Stores, Inc.*,
2016 WL 7826650 (E.D. Tex. Sept 12. 2016) .......................................................................5

*Larson v. Harman Mgmt. Corp.*,
2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 27, 2016) ..................................................13

*Morris v. Unitedhealthcare*,
2016 U.S. Dist. LEXIS 168288 (E.D. Tex. Nov. 8, 2016) ........................................10, 11, 14

*Newhart v. Quicken Loans*,
2016 U.S. Dist. LEXIS 168721 (S.D. Fla. Oct. 12, 2016)..............................................9, 10

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
2013 U.S. Dist. LEXIS 15952 (D.N.J. Feb. 6, 2013) ..........................................................18

*Physicians Healthsource v. Boehringer Ingelheim Pharm.*,
2018 U.S. Dist. LEXIS 64844 (D. Conn. April 18, 2018).....................................................18

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ......................................................................................8

*Reese v. Marketron Broad. Sols.*,
2018 U.S. Dist. LEXIS 77319 (E.D. La. May 8, 2018)..............................................8, 13, 17

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (F.C.C. June 26, 2003).............................................................................9

*Salmon v. CRST Expedited*,
2015 U.S. Dist. LEXIS 37560 (N.D. Okla. Mar. 25, 2015)...............................10, 12, 14 ,15

*Sandusky Wellness Ctr. v. Medco Health Sols.*,
788 F.3d 218 (6th Cir. 2015) ...............................................................................17, 18

*Savett v. Anthem, Inc.*,
2019 U.S. Dist. LEXIS 190955 (N.D. Ohio Nov. 4, 2019) ...........................................16, 18

*Shupe v. JPMorgan Chase Bank*,
2014 U.S. Dist. LEXIS 34467 (D. Ariz. Mar. 14, 2014) .......................................................10

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
228 F. Supp. 3d 1056 (C.D. Cal. 2017) ....................18

*Suriano v. French Riviera Health Spa*,
2018 U.S. Dist. LEXIS 216018 (E.D. La. Dec. 20, 2018)....................9, 14

*Tex. HHS Comm'n v. United States*,
193 F. Supp. 3d 733 (N.D. Tex. 2016) (Godbey, J.)....................8, 12, 15

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*,
325 F. Supp. 3d 728 (N.D. Tex. 2018) ....................4

*U.S. v. Herrera-Ochoa*,
245 F.3d 495 (5th Cir. 2001) ....................5

**Statutes**

42 U.S.C. § 227....................7

**Other Authorities**

47 C.F.R. § 64.1200 ....................7, 8

47 C.F.R. § 64.1200(a)(1)(iii)....................3, 7

47 C.F.R. § 64.1200(a)(2)....................3, 7, 8

47 C.F.R. § 64.1200(f)(12) ....................8, 12, 17

47 C.F.R. § 64.1200(f)(14) ....................11

Rule 12(b)(6)....................7

## I. INTRODUCTION

When confronted with Infogroup's first motion to dismiss (Dkt. Nos. 14-15), Plaintiff Milton Schulz recognized (to his credit) that the motion's overwhelming and dispositive case law doomed his lone claim. Having reviewed that mountain of precedent, and facing sure-fire dismissal, Schulz relented and filed an Amended Complaint (Dkt. No. 19). But he made no effort to cure his defective claim; he added no relevant allegations to bolster it. Instead, he hedged his bets and added a second claim, presumably anticipating that his first claim—which he kept in the Amended Complaint—would be dismissed. Infogroup now brings this motion because the Court should do what Schulz could not bring himself to do: dismiss the defective first claim.

The sole claim in Schulz's initial Complaint (Dkt. No. 1) alleged that Infogroup violated the TCPA by making telemarketing calls to Schulz without his prior express written consent (the "Telemarketing Claim"). Infogroup filed a motion to dismiss the Telemarketing Claim because no court has ever held—not once in tens of thousands of TCPA cases over nearly 30 years—that calls like these, where Schulz never spoke with anyone and never heard any message play, are "telemarketing" calls. So Schulz added a second claim to his Amended Complaint under the theory that Infogroup's calls were ordinary, non-telemarketing calls (the "Call Claim").

Schulz declined, however, to drop the Telemarketing Claim, because it is his Hail Mary pass. The TCPA requires companies to obtain basic "prior express consent" before making an ordinary call to a cellular telephone with an autodialer. That is the theory of Schulz's Call Claim. But when a company makes "telemarketing" calls, a higher level of consent is required: "prior express written consent." Instead of voluntarily giving up the litigation leverage that comes with that stricter requirement, Schulz kept his Telemarketing claim, knowing that the Call Claim is his fallback. But the Telemarketing Claim still fails for the exact same reason as before, and the Court should dismiss it—just as dismissal was appropriate before Schulz amended his Complaint.

## II. WHY SCHULZ'S TELEMARKETING CLAIM FAILS

Schulz asserts in the Telemarketing Claim that Infogroup's calls to him constitute "telemarketing."[1] But contrary to Schulz's assertion, and under the case law, Infogroup's calls to Schulz were not "telemarketing" calls—as his own pleadings establish.

Schulz alleges seven supposedly unlawful calls, but in doing so, he admits (critically) that: (1) he missed five of the calls at issue (that is, he never picked up his phone to answer); (2) there were no voice messages left for him; and (3) for the remaining two calls he did actually answer, he never spoke a word to, nor was ever spoken a word by, the caller. Put differently, the alleged calls had no content whatsoever. None. The legal importance of these admissions is paramount, as they destroy Schulz's "telemarketing" theory.

Without content, Schulz cannot plausibly claim that the calls constituted telemarketing—i.e., that the calls' purpose was to encourage Schulz to purchase Infogroup's goods or services. Courts consistently have held that calls without content are not telemarketing. Here, Schulz merely speculates about the calls' purpose based on their supposed context. But Schulz derives this context from his call to Infogroup—not Infogroup's calls to him. Furthermore, even if this Court were to accept Schulz's speculative "context" (and Infogroup respectfully submits it should not), the purpose Schulz alleges—to collect and confirm his business contact information—does not constitute telemarketing.

The Court should therefore dismiss the Telemarketing Claim because Infogroup's calls do not constitute telemarketing.

[1] Schulz's original Complaint asserted that Infogroup's calls to Schulz were both "advertising" *and* "telemarketing" calls. *See, e.g.*, Compl. at 6, Heading "A." Schulz abandons the "advertising" theory in the Amended Complaint, instead alleging only that Infogroup's calls are "telemarketing." *See generally* Am. Compl., Count I.

## III. BACKGROUND

Infogroup is a highly regarded data company. For decades, Infogroup has collected and verified business contact information for businesses across the country so that patrons (and prospective patrons) of those businesses can accurately connect directly with those businesses. Schulz owns and operates one of those businesses—a chiropractic practice—and he publishes his business phone number, in an open and notorious fashion, across the Internet and telephone directories of every sort imaginable, and on the front door of his for-profit medical practice.

However, as Schulz also admits, it just so happens that he does not use a traditional landline for his chiropractic business number; instead, he uses and publishes his personal cell phone number to conduct his professional, for-profit business. That means the phone number that Schulz gives his patients and prospective patients to call to inquire about purchasing his professional medical services is the same phone number that his family and friends call, for example, to arrange dinner plans. But Schulz has attempted to seize upon what he views as a "gotcha" opportunity to purportedly cash in on alleged violations of the TCPA. This is improper.

The TCPA requires companies to obtain "prior express written consent" before making telemarketing calls.[2] Ordinary calls, by contrast, need only "prior express consent."[3] Schulz insists upon retaining the Telemarketing Claim in his Amended Complaint and is attempting to litigate this case in a prior express written consent framework. But insurmountable case law establishes that Infogroup's calls were not telemarketing calls, for two reasons.

First, Schulz admits that he never spoke with anyone from Infogroup. In fact, Schulz never could have spoken with Infogroup for the calls at issue. That is because Infogroup called Schulz using technology that verifies whether phone numbers are still in service (sometimes known in the

---

[2] 47 C.F.R. § 64.1200(a)(2).
[3] 47 C.F.R. § 64.1200(a)(1)(iii).

industry as "Verification Calls"). Verification Calls are programmed to immediately disconnect if someone answers. In TCPA parlance, Infogroup's calls to Schulz had no "content." Without content, Schulz cannot plausibly allege that Infogroup was trying to sell him anything.

Second, even if Schulz had spoken with Infogroup, it never would have encouraged him to purchase its goods or services. Infogroup collects and verifies business data, at no charge to the businesses, and sells that data to Infogroup's customers, including search engines and other platforms. Patrons down the line, such as prospective chiropractic patients, ultimately rely on Infogroup's verified data to contact and patronize businesses, such as Schulz's. Infogroup did not call Schulz to sell him anything—it called him to verify that his business number was accurate and operational.

Even though Schulz never spoke with Infogroup, and Infogroup never promoted its goods or services to Schulz, he asserts that the calls were telemarketing calls. Recognizing the legal fallacy of his approach, his last-ditch alternative argument is that Infogroup had a "profit motive" in making the supposed telemarketing calls. But, alas, courts have overwhelmingly held that mere profit motive does not transform any business call into telemarketing—and rightly so. Of course this is because <u>every</u> call a typical business makes is arguably ultimately for the sake of profit.

## IV. SCHULZ'S FACT ALLEGATIONS

Infogroup is a data company. (Am. Compl. ¶ 5, n.1.[4]) Infogroup maintains a "business database" that contains information about millions of businesses in the United States and Canada. (*Id.*) Infogroup sells that information to its customers, which include government agencies,

---

[4]The Court may take judicial notice of Infogroup's website and the information contained therein because it is incorporated by reference in the Amended Complaint at Paragraph 5, footnote 1. *See Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 325 F. Supp. 3d 728, 746 n.3 (N.D. Tex. 2018) (taking judicial notice of the defendant's website when deciding motion to dismiss). This motion cites Infogroup's website by reference to Paragraph 5, footnote 1 of the Amended Complaint.

nonprofit groups, and businesses of every size. (*Id.*) Infogroup's customers use that data for countless purposes, including reference, research, and marketing projects. (*Id.*) For example, online search engines use Infogroup's data to provide accurate results when users search for businesses. Other customers use Infogroup's data to provide reliable in-car navigation directions, safely guiding drivers to businesses and other points of interest. (*Id.*)

The key is accuracy. Infogroup is the industry leader in providing its customers with accurate, up-to-date data. (*Id.*) To maintain this high level of accuracy, Infogroup draws on thousands of sources to constantly update its business database. One of those sources is "teleresearch." Infogroup calls businesses to confirm certain key information that is valuable to Infogroup's customers, including business contact information. (*Id.*; *Id.* ¶ 39.)

Schulz owns a chiropractic business in Kansas. (*Id.* ¶ 4.) He publicizes his cell phone number, ending in 7777, as the phone number for his chiropractic business. (*Id.* ¶ 7.) Schulz posts the 7777 number to, for example, his business website[5] and his Facebook page,[6] and the number is listed on countless other websites and directories and even on the front door of his business.[7]

[5]https://www.drmiltonschulz.com (last visited Jan. 8, 2020). The Court may take judicial notice of Schulz's website and Facebook page because they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot be reasonably questioned." *U.S. v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) (citing Fed. R. Evid. 201(b)); *see also Pier 1 Imports*, 325 F. Supp. 3d at 746 n.3 (taking judicial notice of the advertisements from Pier 1's website because "the website is a source whose accuracy cannot be (and has not been) reasonably questioned by Defendants."); *KS Cayton, LLC v. Hobby Lobby Stores, Inc.*, 2016 WL 7826650, at *4 n.1 (E.D. Tex. Sept 12. 2016) (taking judicial notice of "the fact that Pinterest is a social media website that functions as a bulletin board.").

[6]https://www.facebook.com/pages/Dr-Milton-W-Schulz-DC/172958313098942 (last visited Jan. 8, 2020).

[7]*See, e.g.*, https://orthopedic.io/chiropractor/dr-milton-w-schulz-dc-atchison (last visited Jan. 8, 2020); https://www.yelp.com/biz/milton-w-schulz-dc-salina-5 (last visited Jan. 8, 2020).

Infogroup called Schulz seven times between January 2019 and March 2019 to confirm his business contact information. (*Id.* ¶ 52.) Schulz missed five of Infogroup's calls. (*Id.*, Ex. A.) He did answer two calls, but "he did not hear any sound and noticed the call was immediately 'disconnected.'" (*Id.* ¶ 43.) Schulz never spoke with anyone from Infogroup. (*See generally, id.*)

Schulz called Infogroup back to request that it stop calling him. (*Id.* ¶ 33 and Ex. A.) He did not speak with an Infogroup employee, but instead heard this prerecorded message:

> You have reached Infogroup. Please visit www.expressupdate.com to claim and update your business listing so the information about your business is accurately displayed to users of online and mobile search devices. [new voice appears] You cannot leave a message for [another new voice appears] Express Update.

(*Id.* ¶ 34.) Express Update is an Infogroup service that is free to business like Schulz's.[8] To "claim and update your business listing," a business owner like Schulz would simply confirm that his business contact information is correctly listed in Infogroup's database. Express Update is mutually beneficial—it allows patrons to find businesses, and it increases the accuracy (and thus the value) of Infogroup's data. (*Id.* ¶ 35.) But Infogroup never called Schulz to solicit him to use Express Update. As Schulz admits, he only heard about Express Update when he proactively reached out to Infogroup. (*Id.* ¶ 34.)

Schulz alleges that he sent two letters to Infogroup asking not to be called, threatening legal action, and demanding payment of $37,500.00. (*Id.* ¶ 8 and Ex. C.)[9] Schulz does not say what mailing service he used, nor does he provide delivery confirmation. On March 1, 2019, Schulz sent an email to Infogroup asking not to be called. (*Id.* ¶¶ 8, 46-47, and Ex. D.) Infogroup honored that request, and after March 5, 2019, Infogroup never called him again. (*Id.* ¶ 7.) Nonetheless,

---

[8]https://www.expressupdate.com/why_express_update (last visited Jan. 8, 2020).

[9]This is not the first time Schulz has issued such threats to businesses. *See, e.g.*, https://www.facebook.com/245393579206032/posts/dr-milton-w-schulzchiropractic-acupuncture-spinal-decompression-nutrition-physic/605606826518037/ (last visited Jan. 8, 2020).

Schulz filed this lawsuit, seeking $1,500 in damages for each of Infogroup's seven calls. (*Id.*, "WHEREFORE" ¶ E (p. 19).)

## V. CAUSE OF ACTION AT ISSUE

In the Telemarketing Claim, Schulz asserts on behalf of himself and a putative class that Infogroup violated the TCPA, 42 U.S.C. § 227 and 47 C.F.R. § 64.1200. Schulz's claim must satisfy five elements: "No person or entity may [1] [i]nitiate . . . any telephone call [2] that . . . constitutes telemarketing, [3] using an automatic telephone dialing system . . . [4] to [a cell phone number], [5] [without] the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(1)(iii) and (a)(2); Am. Compl. ¶ 6. Infogroup moves to dismiss the Telemarketing Claim because it does not establish the second element—that Infogroup's calls "constituted telemarketing."

## VI. ARGUMENTS AND AUTHORITIES

### A. Legal Standards

When reviewing a Rule 12(b)(6) motion, the court must accept all well-pled facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Twombly*, 550 U.S. at 547).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. But a court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Tex. HHS Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (Godbey, J.) (citation and quotation marks omitted); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not accept conclusory allegations, unwarranted deductions, or legal conclusions." (citation and quotation marks omitted)).

### B. Infogroup's Verification Calls Were Not Telemarketing Calls.

Schulz faces an unenviable task in asserting his Telemarketing Claim: although he never spoke with Infogroup when it called him—and never heard any message on those calls—he must somehow plead that the calls were telemarketing. He cannot. No court has ever found that calls were telemarketing under these facts, and the Court should not do so here.

The TCPA is a highly technical statute, but the issue before the Court is simple. A required element of Schulz's TCPA claim is that Infogroup's calls "constitute[d] telemarketing." 47 C.F.R. § 64.1200(a)(2). "Thus, the sufficiency of plaintiff's TCPA claim . . . turns on whether [the calls] constitute[] . . . telemarketing within the meaning of 47 C.F.R. § 64.1200." *Reese v. Marketron Broad. Sols.*, 2018 U.S. Dist. LEXIS 77319, at *11 (E.D. La. May 8, 2018). The Amended Complaint acknowledges that requirement (Am. Compl. ¶¶ 22-28), but it fails to meet it.

"Telemarketing" is a defined term under the TCPA's implementing regulations:

> [T]he initiation of a telephone call or message for the **purpose** of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (emphasis added).

Infogroup's calls to Schulz do not meet this definition. Because a call's "purpose" controls whether it is telemarketing, courts generally evaluate the call's content and its context. But no court has ever held that a call entirely lacking content is telemarketing. Here, Schulz concedes

that he never spoke to Infogroup or heard a message play when he answered the calls. Schulz therefore impermissibly speculates about what Infogroup *might have* said by calling back Infogroup and browsing its website. Courts do not allow such speculation. Without content, the Court has little basis to conclude that Infogroup called Schulz to promote its "property, goods, or services." *See infra* Section V.B.1.

Because the calls lacked content, the Court need not evaluate their context. But even if the Court did so, that context shows that Infogroup's calls were not telemarketing. As Schulz admits, Infogroup was calling to confirm his business contact information. Case law holds that calls made to confirm contact information are not telemarketing calls. *See infra* Section V.B.2.

**1. Infogroup's Verification Calls did not "constitute telemarketing" because they had no content.**

To determine the purpose of a call, courts often examine the call's content and context. *See, e.g.*, *Suriano v. French Riviera Health Spa*, 2018 U.S. Dist. LEXIS 216018, at *7 (E.D. La. Dec. 20, 2018); *An Phan v. Agoda*, 351 F. Supp. 3d 1257, 1266 (N.D. Cal. 2018);[10] *Broking v. Green Brook Buick GMC Suzuki*, 2017 U.S. Dist. LEXIS 134026, at *14 (D.N.J. Aug. 22, 2017); *Newhart v. Quicken Loans*, 2016 U.S. Dist. LEXIS 168721, at *9 (S.D. Fla. Oct. 12, 2016). Context sometimes matters because a call that is purely informational on its face (i.e., content) may be part of a larger telemarketing campaign, with calls that actually contain telemarketing content. *See, e.g.*, *Golan v. Veritas Entm't*, 788 F.3d 814, 820 (8th Cir. 2015).

[10] *Suriano* and *An Phan* involved text messages, not telephone calls. But for TCPA purposes, text messages are considered to be "calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (F.C.C. June 26, 2003).

But here, for Schulz's claim to survive, the Court would have to do what no court has ever done: determine that a call with no content at all is telemarketing, relying solely on context.[11] Although the context of a call can sometimes shed light on its purpose, context is not a substitute for content. *See Newhart*, 2016 U.S. Dist. LEXIS 168721, at *7-8 (even when a call is made as part of a telemarketing campaign, "deciding whether the telemarketing consent rules apply will require an examination of individual calls, not the 'overall campaign.'") (internal citation omitted); *Salmon v. CRST Expedited*, 2015 U.S. Dist. LEXIS 37560, at *14-15 (N.D. Okla. Mar. 25, 2015) (rejecting plaintiff's telemarketing theory because it "is not based on the content[] of the [call] itself but, instead, plaintiff relies on information gathered from external sources"); *Aderhold v. car2go N.A*, 2014 U.S. Dist. LEXIS 26320, at *25-26 (W.D. Wash. Feb. 27, 2014) (weighing arguable telemarketing context against purely informational content and determining that the message was not telemarketing).

Because Schulz never actually spoke with Infogroup, he is forced to speculate about what might have happened if he had. Courts do not allow such speculation. *See, e.g.*, *Morris v. Unitedhealthcare*, 2016 U.S. Dist. LEXIS 168288, at *27 (E.D. Tex. Nov. 8, 2016) (discussed below); *Shupe v. JPMorgan Chase Bank*, 2014 U.S. Dist. LEXIS 34467, at *7 (D. Ariz. Mar. 14, 2014) (rejecting telemarketing theory because "[p]laintiffs did not actually answer most of the calls," and "because messages generally were not left, [p]laintiffs have no idea what the 'purpose' of the calls would have been . . . ."); *Freyja v. Dun & Bradstreet*, 2015 U.S. Dist. LEXIS 143866, at *5-6 (C.D. Cal. Oct. 14, 2015) ("Plaintiff's mere belief that Defendant 'could have possibly'

[11]In *Golan*, the Eighth Circuit held that certain calls with minimal, nondescript content were telemarketing calls. *See* 788 F.3d at 820. But those calls had *some content* that allowed the court to connect them to a broader telemarketing campaign by defendant. Schulz's Amended Complaint alleges no comparable calls.

been trying to sell something—especially with no further foundation—does not raise a reasonable inference that Defendant was actually trying to sell her anything."); *Abramson v. Caribbean Cruise Line*, 2014 U.S. Dist. LEXIS 88336, at *10 (W.D. Pa. June 23, 2014) ("It is mere speculation on the part of the Plaintiff that the message delivered in [one call] was intended to be delivered in [another call].").[12]

In *Morris*, for instance, a TCPA plaintiff answered one call placed by the defendants, but he missed 11 other calls. The court did not accept plaintiff's speculation about the nature of the calls that he missed. "Plaintiff's bald assertion that [all of the calls] were of a commercial nature . . . particularly given that he did not answer every call[,] is insufficient standing alone to establish the [calls] were telephonic solicitations."[13] *Id.*

It is one thing for Schulz to speculate what would have happened on the calls he did not answer. But his own pleadings establish that the two calls he *did* answer debunk his theory. When Schulz answered those calls, they immediately disconnected.[14] (Am. Compl. ¶ 43.) No human spoke; no message played; no one "encourage[ed] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) ("telemarketing"). It is not plausible for

---

[12] A solitary district court has stated in dicta that an unanswered call could theoretically constitute telemarketing, so long as the caller had a telemarketing "purpose" when it placed the call. *See Bennett v. GoDaddy.com LLC*, 2019 U.S. Dist. LEXIS 59766, at *66 (D. Ariz. Mar. 15, 2019). No other court has adopted that wildly expansive view of the TCPA—nor should this Court.

[13] The question in *Morris* was whether the defendant's calls were "telephone solicitations"—not telemarketing. But the definitions of "telephone solicitation" and "telemarketing" are substantively identical. *See* 47 C.F.R. § 64.1200(f)(14) ("The term ***telephone solicitation*** means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," with certain exceptions not relevant here (emphasis in original)).

[14] Although not alleged in the Amended Complaint, the reason the Verification Calls immediately disconnected is that they had accomplished their purpose: confirming that Schulz's phone number was still in service. *See supra* Section II, Background.

Schulz to speculate that the five calls he missed would have gone any differently. *Tex. HHS Comm'n*, 193 F. Supp. 3d at 738 ("a court does not accept as true conclusory allegations [or] unwarranted factual inferences").

Recognizing that the calls' lack of content eviscerates his telemarketing theory, Schulz tries to guess the purpose of Infogroup's calls by cobbling together information from other sources, including (1) a pre-recorded message that played when Schulz himself initiated a call to Infogroup, and (2) information from Infogroup's website explaining its business model. (Am. Compl. ¶¶ 33-41.) But courts reject this method of speculating about a call's purpose. In *Salmon*, for instance, a truck driver received a pre-recorded call that offered a trucking job opportunity, including a free licensure program for anyone who lacked a commercial driver's license.2015 U.S. Dist. LEXIS 37560, at *14-15. Although the call was a job offer and not a sales pitch, the plaintiff argued—based on "information gathered from external sources"—that defendant's true motivation was to recruit students for the licensure program. The court rejected the plaintiff's reliance on external sources, explaining that "[t]he call itself does not propose a commercial transaction and it does not even indirectly suggest that the recipient of the call should purchase goods or services from [defendant]." *Id.* at *15. This Court should similarly reject Schulz's speculation here.

Schulz admits that he never spoke with Infogroup and that Infogroup's calls to him had no content. On that basis alone, the Court should hold as a matter of law that the calls were not telemarketing.

**2. The context surrounding Infogroup's Verification Calls shows that they were not telemarketing calls.**

Because Infogroup's Verification Calls to Schulz lacked content, any inquiry into their purpose would be impermissibly speculative. But even if the Court considers Schulz's allegations about the context of the calls, the calls did not constitute telemarketing. That is because Infogroup

never tried to sell Schulz anything during these calls, nor would it ever have done so—and Schulz does not allege otherwise. This case is nothing like others within the Fifth Circuit where courts have ruled that calls were telemarketing. *See, e.g.*, *Johnson v. The Berkley Grp., Inc.*, 2013 WL 12130296, at *5 (W.D. Tex. July 2, 2013) (calls that "included promotions of Caribbean's cruise offerings and Berkley's timeshare properties" were telemarketing calls).[15] Instead, Schulz asserts several alternative theories for why Infogroup's Verification Calls were telemarketing, each more attenuated than the last. Infogroup addresses each theory in turn.

**a. Obtaining Schulz's updated contact information was not telemarketing.**

First, Schulz alleges that Infogroup called him "to encourage him to provide or update contact information related to his chiropractic business so Defendant could include it within one or more database(s) Defendant may sell to its subscribers." (Am. Compl. ¶ 35.) Plaintiff's allegation is nearly right: Infogroup made Verification Calls to Schulz to confirm that his number was still in service—not to encourage him to "provide" or "update" his contact information. But even accepting Schulz's version of events, as the Court must at this stage, he has failed to allege a telemarketing purpose.

Courts within the Fifth Circuit and elsewhere routinely hold that "informational" calls—such as calls to acquire contact information—are not telemarketing calls. *See, e.g.*, *Reese*, 2018 U.S. Dist. LEXIS 77319, at *12 ("informational messages do not rise to the level of advertising or telemarketing merely because the messages contain some commercial information"); *Suriano*,

[15]Other telemarketing examples across the country include: A&W advertising a 99-cent root beer float, *Larson v. Harman Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 27, 2016); encouraging recipients to purchase a cash advance, *Drew v. Lexington Consumer Advocacy, LLC*, 2016 U.S. Dist. LEXIS 52385 (N.D. Cal. Apr. 18, 2016); urging customers to redeem "Reward Zone" points, *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012); and promoting the value of a certain stock, *Consumer Prot. Corp. v. Neo-Tech News*, 2009 U.S. Dist. LEXIS 65093 (D. Ariz. July 16, 2009).

2018 U.S. Dist. LEXIS 216018, at *3 (same); *Morris*, 2016 U.S. Dist. LEXIS 168288, at *5-6 (same). In *Morris*, for instance, the Eastern District of Texas cited with approval a case holding that a "call to acquire information, where defendant did not market or attempt to sell anything to plaintiff, was not a telephone solicitation." 2016 U.S. Dist. LEXIS 168288, at *24 (citing *Freyja*, 2015 U.S. Dist. LEXIS 143866, at *5-6).[16] Indeed, *Freyja* rejected precisely the argument Schulz makes here. There, the plaintiff argued that "because Defendant sells business information it gathers to other people, calls made to gather that information are solicitations. But this is just incorrect. The regulation bans calls to sell property, goods, or services, not calls to acquire information." *Freyja*, 2015 U.S. Dist. LEXIS 143866, at *5-6. *See also Salmon*, 2015 U.S. Dist. LEXIS 37560, at *15 ("The call itself does not propose a commercial transaction and it does not even indirectly suggest that the recipient of the call should purchase goods or services from [defendant].").

The same is true here. Infogroup never encouraged Schulz to purchase its goods or services—nor could it have done so. Infogroup only called Schulz to confirm his business contact information (by his own allegation). Under controlling case law, that purpose does not amount to telemarketing.

**b. Selling Schulz's contact information was not telemarketing.**

Because Infogroup's Verification Calls are not telemarketing calls, Schulz next attempts to hold Infogroup liable for hypothetical future calls placed by Infogroup's customers.[17] Specifically, Schulz alleges that Infogroup called him to update his contact information and then

[16]As in *Morris*, the question in *Freyja* was whether the defendant's calls were "telephone solicitations"—not telemarketing. But the definitions of those two terms are substantively identical.

[17]Infogroup's typical customers include search engines, marketing companies, and other business-to-consumer platforms—not small business owners like Schulz. *Supra* at 4-5.

sell that information to Infogroup's customers, who themselves "could advertise and tele-market to [Schulz] to sell [him] their goods and services." (Am. Compl. ¶ 35.) As a threshold matter, Schulz's allegation that Infogroup's customers "could" hypothetically call him someday to sell him their goods and services is impermissibly speculative. *See Tex. HHS Comm'n*, 193 F. Supp. 3d at 738. Notably, Schulz does not allege that he has ever actually received any such calls. Further, Schulz wholly fails to plausibly allege that Infogroup's customers would market to him by phone. Marketing efforts conducted by mail, email, or in person do not violate the TCPA.

But even if one of Infogroup's customers did someday call Schulz for telemarketing purposes, that would not transform Infogroup's Verification Calls into telemarketing calls. "As stated by the FCC, the Court must focus on the purpose of the call rather than plaintiff's perception of the call . . . ." *Salmon*, 2015 U.S. Dist. LEXIS 37560, at *12. The purpose of Infogroup's calls was to confirm that Schulz's business phone number was active. But Schulz attempts to engraft a proximate-cause analysis onto the TCPA statute. Under that theory, any actor who plays a causative role in future telemarketing calls is liable for those calls. That theory has no basis in the TCPA statute or regulations, and it would trigger an unprecedented expansion of the TCPA. Indeed, Schulz himself would be liable under that theory: he has publicized his business phone number across countless platforms, thus enabling and facilitating future theoretical telemarketing calls.

Under the TCPA, the sole question before the Court is whether Infogroup called Schulz for the purpose of selling Infogroup's goods or services. Without question, that was not the purpose of Infogroup's Verification Calls. "Simply put, [plaintiff] cannot rely on [defendant's] overarching business model . . . to transform the stated purpose of [defendant's call]." *Edelsberg v. Vroom, Inc.*, 2018 U.S. Dist. LEXIS 50420, at *18-19 (S.D. Fla. Mar. 27, 2018) (holding that

possibility of future marketing efforts did not transform informational text message into telemarketing); *Savett v. Anthem, Inc.*, 2019 U.S. Dist. LEXIS 190955, at *13 (N.D. Ohio Nov. 4, 2019) (agreeing with court that "expressly rejected the plaintiff's theory that because [insurance company's] overarching goal was to retain customers and receive premiums, the call had the clear implication of encouraging purchase of a good, product, or service" (citation and quotation marks omitted)).

**c. Inviting Schulz to sign up for Express Update was not telemarketing.**

Schulz's next theory is that Infogroup's Verification Calls are "a pretext to obtain recipients' participation in [Infogroup's] proprietary database"—i.e., Express Update. (Am. Compl. ¶ 38; *see also id.* ¶ 36 ("[Infogroup] uses its autodialed calls to [Schulz] and class members in order to encourage and induce the use of its 'Express Update' services.").) That theory fails to establish telemarketing for two reasons.

First, Schulz never explains how Infogroup's Verification Calls, which contain no content and disconnect immediately after being answered, encourage anyone to use Express Update. Schulz's unstated logic is that businesses who receive Verification Calls will: (1) call Infogroup's phone number; (2) hear the pre-recorded Express Update message; (3) visit expressupdate.com; and (4) sign up for its services. The Court should reject that implausible chain of speculation. "Plaintiffs are not permitted to pile inference upon inference . . . to support their claims." *Cavazos v. Edgewood Indep. Sch. Dist.*, 400 F. Supp. 2d 948, 964 (W.D. Tex. 2005); *cf. Daniel v. Five Stars Loyalty, Inc.*, 2015 U.S. Dist. LEXIS 159007, at *12 (N.D. Cal. Nov. 24, 2015) ("To the extent that it could be reasonably inferred based on context or otherwise that the text's purpose was also to encourage future purchases . . . that purpose is simply too attenuated to make the text telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12)."); *Sandusky Wellness Ctr. v.*

*Medco Health Sols.*, 788 F.3d 218, 225 (6th Cir. 2015) ("extraneous and speculative down-the-stream evidence cannot convert non-ads into ads"). Courts within the Fifth Circuit have rejected telemarketing theories far less attenuated than Schulz's. *See, e.g.*, *Reese*, 2018 U.S. Dist. LEXIS 77319, at *13-14 (informational text message that also contained link to defendant's website, where plaintiff could buy concert tickets, was not telemarketing).

Second, even if Infogroup's Verification Calls were an ill-conceived ruse to drive traffic to expressupdate.com (they were not), that purpose would not constitute telemarketing. A telemarketing call must "encourage[] the **purchase** or **rental** of, or **investment** in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) (emphases added). If Schulz had visited expressupdate.com, he would quickly have learned that Express Update is a free service for businesses like his. Signing up for Express Update does not involve purchasing, renting, or investing in anything.[18]

The Court should therefore reject Schulz's assertion that Infogroup engaged in telemarketing by encouraging him (however remotely and implausibly) to sign up for Express Update.

**d. Infogroup's "profit motive" did not transform its calls into telemarketing.**

Schulz's final theory is that Infogroup's Verification Calls constituted telemarketing because "there was a clear profit motive behind" the calls. (Am. Compl. ¶ 41.) Specifically, Schulz alleges that Infogroup is "collecting valuable data to provide to [its] paying customers." (*Id.*) That is true. Infogroup is a for-profit enterprise. But mere profit motive, without more, does not transform every call a company makes into a telemarketing call.

[18] *See* https://www.expressupdate.com/why_express_update.

Courts have overwhelmingly rejected Schulz's profit-motive theory. In *Mauthe v. Optum Inc.*, the defendant sent the plaintiff a fax requesting information in order to update defendant's "national database of healthcare providers, containing providers' contact information, demographics, specialties, education, and related data." 925 F.3d 129, 131 (3d Cir. 2019), *cert. denied*, 2019 U.S. LEXIS 7169 (Nov. 25, 2019). Plaintiff sued, arguing that "although he was not a purchaser of defendants' products or services, defendants violated the TCPA because they had a profit motive in sending him the fax so that the fax should be regarded as an advertisement." *Id.* at 133. The court disagreed: "It seems beyond doubt that a fax does not become an advertisement merely because the sender intended it to enhance the quality of its products or services and thus its profits. After all, a commercial entity takes almost all of its actions with a profit motivation." *Id.* Many other courts have rejected Schulz's profit-motive theory.[19] The Court should do the same here.

---

[19]*See Savett*, 2019 U.S. Dist. LEXIS 190955, at *13 (rejecting profit-motive theory); *Physicians Healthsource v. Boehringer Ingelheim Pharm.*, 2018 U.S. Dist. LEXIS 64844, at *24 (D. Conn. April 18, 2018) ("[Plaintiff's] interpretation would force any faxes with a general business purpose—in the case of a for-profit entity, virtually all of them—into the prohibited category of advertising. Nothing in the TCPA suggests that Congress intended the statute's proscription to be so broad."); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1068 (C.D. Cal. 2017) (accepting profit motive argument would "transform practically *all* communication from any entity that is financially motivated and exchanges goods or services for money into telemarketing or advertising, which would contravene the delineated definitions of telemarketing and advertising"); *ARcare v. IMS Health, Inc.*, 2016 U.S. Dist. LEXIS 125262, at *4 (E.D. Ark. Sept 15, 2016) (rejecting plaintiff's argument that "[d]efendant's faxes do not seek merely to verify [plaintiff's] contact information" but instead were "sent to generate business and maximize [plaintiff's] profit motive"); *Sandusky*, 788 F.3d at 225 ("The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation."); *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2013 U.S. Dist. LEXIS 15952, at *15 (D.N.J. Feb. 6, 2013) ("the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits").

## VII. CONCLUSION AND PRAYER

The Court should dismiss Schulz's Telemarketing Claim for one simple reason: Infogroup's calls had no content. Without content, there is no factual basis to plausibly conclude that the calls had a telemarketing purpose. No court has ever done what Schulz asks this Court to do. The Court should end its analysis there.

Even so, both for the sake of completeness and to demonstrate the strength of its legal support, Infogroup has methodically refuted each of Schulz's attempts to muddy the otherwise clear waters by substituting content for speculative context. Even if the Court were to accept Schulz's speculative and unfounded allegations, which it should not, Infogroup's calls do not constitute telemarketing.

Infogroup respectfully requests that the Court grant its motion and dismiss the Telemarketing Claim.

DATED: January 17, 2020

Respectfully submitted,

By: /s/ Sean G. Wieber

Sean G. Wieber (*pro hac vice*)
Kevin P. Simpson (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
swieber@winston.com
kpsimpson@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

-and-

[continued on next page]

Thomas B. Walsh, IV
State Bar No. 00785173
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
twalsh@winston.com
Telephone: 214-453-6500
Facsimile: 214-453-6400

ATTORNEYS FOR DEFENDANT
INFOGROUP INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are served with a copy of this document via the Court's EM/ECF System on January 17, 2020, per Local Rule 5.1(e).

*/s/* Kevin P. Simpson
Kevin P. Simpson