**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MILTON SCHULZ, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INFOGROUP INC.,**<br><br>**Defendant.** | **CASE NO. 3:19-cv-01620-N**<br><br>**Judge David C. Godbey**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT INFOGROUP INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff Milton Schulz resorts to desperate measures to attempt to keep his Telemarketing Claim alive. He essentially asks this Court to ignore over 30 years of precedent and reach an untenable legal conclusion—**one that no other court in recorded jurisprudential history has embraced**. For the reasons explained below and in Infogroup's Motion (Dkt. No. 24), this Court should not be the first.

Confronted with his unenviable position, Schulz *could have* acknowledged the challenge before him and simply explained why this Court should nonetheless issue a first-in-the-nation ruling. *Instead*, Schulz filed an Opposition filled with obfuscations and red herrings, all under the pretext that his novel telemarketing theory is run-of-the-mill. *See* Opp. at 21 (asserting that Infogroup's calls fit "squarely within the C.F.R.'s definition of telemarketing").

While candor toward the Court is always important, it is paramount when dealing with the TCPA. Congress authorized private rights of action under the TCPA to be brought in any state or federal court across the country where jurisdiction is proper. *See* 47 U.S.C. § 227 (b)(3). Nation-wide jurisdiction, along with an aggressive plaintiffs' bar—further incentivized by uncapped statutory damages and the hammer of debilitating putative class action damages calculations—has led to a judicially acknowledged deluge of TCPA filings. Unsurprisingly, this cascade has sometimes led to divergent precedent on certain fundamental aspects of the statute. That phenomenon is why Infogroup, unlike Schulz, preemptively acknowledged seemingly unfavorable cases and explained why they are inapplicable and do not change the ultimate result required here.

In this Reply, Infogroup carefully dissects Schulz's Opposition, explaining each misdirection (and mischaracterization of Infogroup's positions) so that the Court can issue an accurate, informed opinion. While that close legal analysis is important, this rule of thumb is

equally instructive: if Schulz's theory were consistent with the TCPA, its regulations, and interpreting case law, then at least one court would have adopted Schulz's argument during the last 30 years (given the tens of thousands of reported TCPA cases). No court has done so. This fact is devastating to Schulz's novel theory.

Left with no tenable legal argument, Schulz spends many pages decrying robocalls; indeed, he suggests that policy considerations should trump the text of the statute. *See* Opp. at 17 ("The Court ought not to allow Defendant's novel methods to evade the reach of the statute that was intended to prohibit such vexatious and bothersome calls."). Schulz pretends that his Telemarketing Claim is the last line of defense for the public. But as Infogroup makes clear on page one of its Motion, the proper framework for this lawsuit is Schulz's Call Claim—not his Telemarketing Claim. By granting Infogroup's Motion, the Court will not prematurely end this war—it will simply ensure that the parties fight on the right battlefield. Infogroup will still be required to prove that it had prior express consent to call Schulz, or that it did not call Schulz using an automatic telephone dialing system.[1] Infogroup welcomes that fight; Schulz is running from it.

The Court should grant Infogroup's Motion and dismiss Schulz's Telemarketing Claim with prejudice so that the parties can litigate the sole claim that should be litigated.

## ARGUMENT

### I. Infogroup's calls to Schulz were not telemarketing calls because they had no content.

No court in the United States has ever been faced with a call without content and held it to be "telemarketing" under the TCPA. *See* Mot. at 10. The reason why is obvious: a call that is designed to immediately disconnect, such that the recipient could never speak with anyone or hear

[1] Contrary to Schulz's assertion that Infogroup has conceded using an ATDS, *see* Opp. at 6-7 n.4, Infogroup has simply declined to challenge whether Schulz plausibly alleged that fact at the pleading stage. The same is true for every other element of Schulz's two claims.

a message, cannot possibly have "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) (defining telemarketing calls). Schulz never offers a theory of how Infogroup's silent Verification Calls encouraged him to purchase anything. The Court should reject Schulz's Telemarketing Claim because: (1) the calls he received had no content, and (2) as a result, the calls cannot constitute telemarketing.

**A. Infogroup's calls to Schulz lacked any content at all.**

Instead of forthrightly acknowledging that Infogroup's calls to him lacked content, Schulz introduces his first red herring (the first of many). He spends four pages (Opp. 11-15) discussing something he calls "Express Update Calls," and he argues that these calls constitute telemarketing. According to Schulz's Opposition (but not his Amended Complaint), Infogroup's "Express Update Calls" use live agents to speak with businesses and collect or verify their contact information. But even if Schulz had properly alleged the existence and nature of these calls (he did not—*see* Section II), and even if this type of call constituted telemarketing (it does not—*see* Section II), none of that would matter: Schulz does not allege that he received Express Update Calls. Instead, Schulz alleges that he called Infogroup and heard a prerecorded message for Express Update. *See* Am. Compl. ¶ 34. But the TCPA governs outbound calls, not inbound calls. *See* 47 U.S.C. § 227(b). Infogroup's cases—which Schulz ignores—confirm that Schulz cannot plug Infogroup's inbound message into its outbound calls in order to manufacture non-existent content. *See* Mot. at 10-11 (citing, *e.g.*, *Abramson v. Caribbean Cruise Line*, 2014 U.S. Dist. LEXIS 88336, at *10 (W.D. Pa. June 23, 2014) ("It is mere speculation on the part of the Plaintiff that the message delivered in [one call] was intended to be delivered in [another call].")).

The Court must therefore evaluate the calls that Schulz actually received: Verification Calls. Schulz admits that these calls had no content. When he answered them, no person spoke

and no message played. When he did not answer, no message was left. Am. Compl. ¶¶ 31, 42-43. Schulz thus refutes his own allegation that the calls "promote[d] [its] commercially available proprietary databases by offering its services and supposed benefits to called parties." *Id.* ¶ 41.

**B. Calls without content cannot be telemarketing calls.**

Because the calls to Schulz entirely lacked content, they were not telemarketing calls. *See* Mot. at 9-12; *Morris v. Unitedhealthcare*, 2016 U.S. Dist. LEXIS 168288, at *27 (E.D. Tex. Nov. 8, 2016) ("Plaintiff's bald assertion that [all of the calls] were of a commercial nature . . . particularly given that he did not answer every call[,] is insufficient standing alone to establish the [calls] were telephonic solicitations."); *Shupe v. JPMorgan Chase Bank*, 2014 U.S. Dist. LEXIS 34467, at *7 (D. Ariz. Mar. 14, 2014) (same). Schulz fails to address, or even acknowledge, these cases (and others). Instead, he begins by misrepresenting Infogroup's position. Schulz states:

> As Defendant itself concedes, "[a]n unanswered call could theoretically constitute telemarketing, so long as the caller had a telemarketing 'purpose' when it placed the call." Def's Brf. at 11 (citing [*Bennett v. GoDaddy.com LLC*]).

Opp. at 10. But that partial quotation belies Infogroup's actual discussion of *Bennett*:

> A solitary district court has stated in dicta that an unanswered call could theoretically constitute telemarketing, so long as the caller had a telemarketing "purpose" when it placed the call [citing *Bennett*]. No other court has adopted that wildly expansive view of the TCPA—nor should this Court.

Mot. at 11 n.12. Not only does *Bennett* stand alone[2]—*compare Newhart v. Quicken Loans*, 2016 U.S. Dist. LEXIS 168721, at *9 (S.D. Fla. Oct. 12, 2016)—its holding was dicta because the court

[2] Schulz asserts that "it is well accepted that a recipient ***need not answer a call*** for the court to consider the intended context or purpose of the call." Opp. at 11. In a continuing trend, this statement is highly misleading. The sole case Schulz cites for that proposition, *Shuckett v. DialAmerica Mktg.*, 2019 U.S. Dist. LEXIS 29598 (S.D. Cal. Feb. 22, 2019), is not on point. The issue in *Shuckett* (and in *Van Patten*, which *Shuckett* cites) was whether an unanswered call creates an Article III injury—not whether an unanswered call constitutes telemarketing. Indeed, contrary to Schulz's suggestion, *Shuckett* had nothing to do at all with the "context or purpose of the call."

was not faced with calls that lacked content. In *Bennett*, the defendant had argued that the court could not certify a TCPA telemarketing class because the "purpose" inquiry would create individualized issues and unworkable mini-trials; each call across two telemarketing campaigns would need to be analyzed separately. The court rejected that argument because "there is significant evidence here that the calls initiated under the two campaigns were initiated for telemarketing purposes." *Bennett*, 2019 U.S. Dist. LEXIS 59766, at *73. Accordingly, even if a stray call went unanswered, or the caller hung up, those calls would still constitute telemarketing.

The Court should not follow the dicta in *Bennett*. *See Shupe*, 2014 U.S. Dist. LEXIS 34467, at *7 (rejecting telemarketing theory because "[p]laintiffs did not actually answer most of the calls," and "because messages generally were not left, [p]laintiffs have no idea what the 'purpose' of the calls would have been"). But *Bennett* is inapposite even on its own terms. Here, unlike in *Bennett*, there is no "significant evidence," or any plausible allegation at all, that the Verification Calls to Schulz were initiated for a telemarketing purpose. Schulz's allegations only establish, at most, that <u>inbound callers</u> to Infogroup can hear a message play.

Schulz's reliance on *Golan* fails for the same reason. As discussed in Infogroup's Motion, the telemarketing calls in *Golan* offer the perfect contrast to Infogroup's calls. In *Golan*, when recipients answered a call, they heard a long, pre-recorded message that promoted a forthcoming movie. *Golan v. Veritas Entm't*, 788 F.3d 814, 817 (8th Cir. 2015). When a recipient did not answer a call, the caller left a shorter, pre-recorded message stating the identity of the caller and the putative purpose of the call. *Id.* Based on the structure of this campaign and the information provided in the shorter messages (including the stated purpose), the court was able to conclude that the unanswered calls were part of a broader telemarketing campaign. *Id.* at 820.

Here, by contrast, Infogroup's calls to Schulz were the same whether he answered the calls

or not: they had no content at all. Unlike the plaintiffs in *Golan*, Schulz actually did answer Infogroup's calls and never heard any telemarketing (or anything at all). He thus fails to plausibly allege that he ever received—or ever would have received—a call in which Infogroup actually encouraged him to purchase, rent, or invest in property, goods, or services (the definition of a telemarketing call). *See Freyja v. Dun & Bradstreet*, 2015 U.S. Dist. LEXIS 143866, at *5-6 (C.D. Cal. Oct. 14, 2015) ("Plaintiff's mere belief that Defendant 'could have possibly' been trying to sell something—especially with no further foundation—does not raise a reasonable inference that Defendant was actually trying to sell her anything.") (case ignored by Schulz); *Salmon v. CRST Expedited*, 2015 U.S. Dist. LEXIS 37560, at *14-15 (N.D. Okla. Mar. 25, 2015) (rejecting plaintiff's telemarketing theory because it "is not based on the content[] of the [message] itself but, instead, plaintiff relies on information gathered from external sources").[3]

Next, Schulz presents a string citation for the proposition that a call's context is relevant to determining its purpose (and thus whether it is telemarketing). *See* Opp. at 8-9. That assertion is neither new nor contentious; Infogroup made clear in its Motion that a call's context is relevant to the telemarketing inquiry. *See* Mot. at 8 ("Because a call's 'purpose' controls whether it is telemarketing, courts generally evaluate the call's content and its context.").[4] The problem—which none of Schulz's string-cited cases solve—is that context without content is meaningless.

---

[3] Schulz inaccurately describes *Salmon* in his attempt to distinguish it. He says that the "external sources" the court rejected in *Salmon* were the plaintiff's "unsubstantiated personal beliefs." Opp. at 19. Not so. The plaintiff in *Salmon* alleged that a call offering him a truck driving position was a pretext for him to enroll in a driving course. As proof, he submitted a "copy of the driver training agreement that would be signed by an applicant to the driving school." *Id.* at *5. That agreement—not plaintiff's intangible "beliefs"—was one of the "external sources" the court rejected.

[4] Once again, Schulz mischaracterizes Infogroup's position on a key issue: he states that Infogroup "argu[es] that the content of a call is the only factor that should be considered when determining whether the call was made for a telemarketing purpose." Opp. at 8. In fact, Infogroup acknowledged the role context sometimes plays. Mot. at 8.

Indeed, none of Schulz's cases involved calls that wholly lacked content.

Finally, Schulz argues that the FCC has deemed "hang-up" and "dead-air" calls to be "hallmarks" of telemarketing calls. *See* Opp. at 2, 10. But, unfortunately for Schulz, the FCC Order he cites says no such thing. Although the Order loosely uses the term "telemarketing," the Order actually states that hang-up calls indicate the use of a predictive dialer. But a predictive dialer can be used for any type of call—not only telemarketing calls. *See, e.g.*, *Adams v. Safe Home Sec. Inc.*, 2019 U.S. Dist. LEXIS 126522, at *10 (N.D. Tex. July 30, 2019) (discussing use of predictive dialers for debt-collection purposes).

Thus, the Court should dismiss Schulz's Telemarketing Claim because the calls he alleges had no content and thus cannot constitute telemarketing calls under the plain text of the TCPA, its regulations, and applicable case law.

## II. Schulz's manufactured context does not render Infogroup's calls telemarketing.

As demonstrated above, the Court should dismiss Schulz's Telemarketing Claim solely because Infogroup's calls to him wholly lacked content. But even if the Court considers the alleged context around these calls, Schulz's claim still fails for two reasons. First, Schulz failed to properly plead the facts he uses to create this alleged context. Second, even accepting all of Schulz's unsupported and improper allegations as true, Infogroup's calls to Schulz were not telemarketing.

### A. Schulz's "context" allegations are unsupported and improperly pled.

Schulz's context allegations focus on a concept he raises for the first time in his Opposition: "Express Update Calls." He alleges that these calls, in which live agents collect or verify information from businesses, reveal the purpose behind Infogroup's Verification Calls (the only calls Schulz actually received). *See* Opp. at 15-16. Alternatively, Schulz alleges that Verification Calls are part of a broader putative "scheme" involving Express Update Calls. *Id.* at 16 n.9.

For three reasons, Schulz has failed to properly plead the concept of "Express Update

Calls." **First**, Schulz simply failed to allege or describe such calls in his Amended Complaint.[5] **Second**, recognizing his failure to do so, Schulz improperly attempts to supplement his pleadings in his Opposition. *See Estes v. JP Morgan Chase Bank, Nat'l Ass'n*, 613 F. App'x 277, 280 (5th Cir. 2015) (affirming district court's refusal to consider additional factual allegations contained in opposition brief because courts "must limit [themselves] to the contents of the pleadings"). Schulz asks the Court to take judicial notice of a message board and a third-party website. Opp. at 13-14. While courts may take judicial notice of "reliable sources" on the internet, *Domain Vault LLC v. McNair*, 2015 WL 5695519, at *3 (N.D. Tex. Sept. 28, 2015), reviews and other commentary by unverified individuals online cannot be judicially noticed. *See, e.g.*, *Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (court erred in relying on Wikipedia because it can be edited by anonymous users); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) ("information appearing on the third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination").[6] **Third**, contrary to Schulz's misrepresentation of Infogroup's Motion, it never describes anything like "Express Update Calls." *See* Opp. at 14 (citing Mot. at 6). In fact, the Motion states that "Infogroup never called Schulz to solicit him to use Express Update." Mot. at 6. The Court should therefore decline to consider Schulz's new context allegations regarding so-called "Express Update Calls."

---

[5] The Court should deny Schulz's request to conduct discovery in order to bolster his deficient allegations. *See* Opp. at 11. Schulz cannot open the discovery door on a motion to dismiss merely because he wishes to confirm his unsubstantiated allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . .").

[6] That prohibition is particularly appropriate in TCPA suits, where user-generated web postings can be manufactured for litigation purposes. *See In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278 (A. Pai, dissenting) ("the TCPA has become the poster child for lawsuit abuse . . . Some lawyers go to ridiculous lengths to generate new TCPA business.")

**B. Even accepting all of Schulz's unfounded allegations, none of Infogroup's calls to Schulz constituted telemarketing.**

The Court should not consider the alleged context around Infogroup's calls to Schulz because: (1) the calls lacked content, and (2) Schulz's context allegations are flawed for the reasons explained above. Even so, Infogroup's Motion meticulously examined each of Schulz's possible "context" theories and explained why none of them show that Infogroup's calls are telemarketing. *See* Mot. at 12-18. In his Opposition, Schulz wisely abandons some of those theories; for instance, he apparently no longer contends that mere "profit motive" transforms every call into a telemarketing call.[7] But the theories that remain still fail.

The crux of Schulz's context argument is that Infogroup's calls constitute telemarketing because they "effectuate a mutually beneficial exchange—specifically, the exchange of one item of value ([Schulz's] information) for another item of value ([Infogroup's] service updating [Schulz's] business listing)." Opp. at 21. Indeed, Schulz rests his entire Opposition on this theory; he uses the term "mutually beneficial" nine times and "exchange" 28 times. But no matter how often Schulz repeats those phrases, he cannot jam them into the definition of "telemarketing."

The fundamental flaw of Schulz's "mutually beneficial exchange" theory is that a "telemarketing" call must encourage the "**purchase** or **rental** of, or **investment** in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) (emphases added). The regulation does not encompass every "exchange" or quasi-economic transaction; to the contrary, the call recipient must <u>specifically</u> be prompted to purchase, rent, or invest. Indeed, Schulz's own cases recognize

[7] Schulz spends several pages chiding Infogroup for citing *Mauthe v. Optum*. *See* Opp. at 17-19. Infogroup cited *Mauthe* solely to refute Schulz's allegation that Infogroup's "profit motive" transformed all of its calls into telemarketing calls. *See* Am. Compl. ¶ 41 ("there was a clear profit motive behind Defendant's autodialed calls"); Mot. at 18. While Infogroup disagrees with Schulz's analysis of *Mauthe* (which ignores the six other cases Infogroup cited for the same proposition), Schulz has taken this point out of issue by abandoning his profit-motive theory.

this distinction and thus destroy his theory. *See Dolemba v. Ill. Farmers Ins. Co.*, 2015 U.S. Dist. LEXIS 104314, at *13 (N.D. Ill. Aug. 10, 2015) (call inviting plaintiff to a town hall to learn about becoming an insurance agent was not telemarketing because "the call did not explicitly *or implicitly* encourage him to purchase, or 'invest' in, any property, goods, or services" (emphasis in original)); *Payton v. Kale Realty, Ltd. Liab. Co.*, 164 F. Supp. 3d 1050, 1063 (N.D. Ill. 2016) (no telemarketing because "the intent of the message [was] not to encourage an individual to purchase any of Kale's services but rather to inform plaintiffs about an opportunity to become an independent contractor for Kale").

The rule of these cases is that even if both parties stand to benefit from a proposed transaction, that fact does not convert the transaction into a purchase, rental, or investment. *See Salmon*, 2015 U.S. Dist. LEXIS 37560, at *15 ("The call itself [did] not propose a commercial transaction and it [did] not even indirectly suggest that the recipient of the call should purchase goods or services from [defendant]"). The telemarketing cases that Schulz cites only prove this rule. *See, e.g.*, *Chesbro v. Best Buy Stores*, 705 F.3d 913, 918 (9th Cir. 2012) ("The robot-calls urged the listener to 'redeem' his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for 'shopping at Best Buy.'"). Schulz never alleges in his Amended Complaint that he could have purchased anything from Infogroup (much less rent or invest); accordingly, he fails to allege that any of Infogroup's calls to him were telemarketing.[8]

## CONCLUSION

The Court should grant Infogroup's Motion and dismiss Schulz's Telemarketing Claim with prejudice.

---

[8] In his Opposition, Schulz asserts that he claims "to be a potential direct purchaser of defendant's product." Opp. at 18. But no such allegation exists in the Amended Complaint. And he cannot go on a fishing expedition in discovery to manufacture this allegation. *See supra* note 5.

DATED: March 13, 2020

Respectfully submitted,

By: /s/ Sean G. Wieber
Sean G. Wieber (*pro hac vice*)
Kevin P. Simpson (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
swieber@winston.com
kpsimpson@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

-and-

Thomas B. Walsh, IV
State Bar No. 00785173
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
twalsh@winston.com
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

ATTORNEYS FOR DEFENDANT
INFOGROUP INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are served with a copy of this document via the Court's EM/ECF System on March 13, 2020, per Local Rule 5.1(e).

*/s/* Kevin P. Simpson
Kevin P. Simpson