IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILTON SCHULZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-1620-N |
| | § | |
| INFOGROUP, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Infogroup, Inc.'s ("Infogroup") partial motion to dismiss [23]. For the reasons below, the Court grants the motion and dismisses Plaintiff Milton Schulz's ("Schulz") Telephone Consumer Protection Act ("TCPA") telemarketing claim.

### I. ORIGINS OF THE DISPUTE

The parties' dispute arises from a series of calls that Infogroup made to Schulz's personal cell phone number, which he publicly lists as the number for his chiropractor business. Am. Compl. 2 [19]. Infogroup is a data company which collects contact information for businesses and sells this data to third parties, such as government agencies or search engines. *Id.* at 2, 7; Def.'s Mtn. Dismiss Brief 3–4 [24]. One method Infogroup employs to do this involves technology that dials telephone numbers associated with businesses and automatically disconnects once someone answers. Def.'s Mtn. Dismiss Brief 3–4 [24]. Infogroup describes these attempts as "verification calls," which it uses to confirm that contact information is accurate. *Id.* Schulz alleges that he received calls from

MEMORANDUM OPINION AND ORDER – PAGE 1

Infogroup on eight days between January 2019 and March 2019.  Am. Compl. 2 [19].  Schulz answered two of these calls and states that the calls immediately disconnected.  No one spoke to him, and no message played.  *Id.* at 10.  Schulz did not allege that he received any voicemail messages from the Infogroup calls that he did not answer.

When Schulz called the number back to request that it stop calling him, he heard an automated message advertising Infogroup's Express Update program, offered free to businesses. The message stated as follows:

> You have reached Infogroup.  Please visit www.expressupdate.com to claim and update your business listing so the information about your business is accurately displayed to users of online and mobile search devices.  You cannot leave a message for Express Update.

Am. Compl. 7 [19].  Schulz then sent two letters and an email to Infogroup requesting that it cease contacting him or risk a lawsuit.  *Id.* at 2–3.  On July 3, 2019, Schulz filed this suit and later amended his complaint to allege two TCPA claims and seek damages for each of the calls.  Am. Compl. [19].  Infogroup then filed this partial motion to dismiss the TCPA telemarketing claim.

## II.  LEGAL STANDARDS

### A.  *Rule 12(b)(6) Motion*

When addressing a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this standard, a plaintiff must "plead[ ] factual content that allows the

MEMORANDUM OPINION AND ORDER – PAGE 2

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### B. TCPA Telemarketing Claim

The TCPA generally prohibits "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message" without the consent of the call recipient and creates a private right of action for TCPA violations. 47 U.S.C. § 227(b)(1)(B), (b)(3)(B). A heightened consent requirement applies to telemarketing calls, where the caller must have the recipient's prior express written consent. 47 C.F.R. 64.1200(a)(1), (a)(2). To state a TCPA claim for telemarketing, plaintiffs must show that a person or entity initiated a telephone call constituting telemarketing using an automatic telephone dialing system to a private number without the prior express written consent of the called party. 47 C.F.R. § 64.1200(a)(1)(iii), (a)(2). "Telemarketing" is defined by the TCPA's implementing regulations as follows:

> [T]he initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

MEMORANDUM OPINION AND ORDER – PAGE 3

47 C.F.R. § 64.1200(f)(12). Courts look to both the content and context of calls to determine whether they were made with the requisite telemarketing "purpose." *See Golan v. Veritas Enter., LLC*, 788 F.3d 814, 820 (8th Cir. 2015); *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

### III. INFOGROUP'S CALLS DO NOT CONSTITUTE TELEMARKETING

Infogroup argues that Schulz has not established that its calls to him "constitute[ed] telemarketing" because its calls to Schulz communicated no "content" and thus could not encourage purchasing, renting, or investing in Infogroup services.[1] The Court need not decide this issue here because Schulz has not alleged facts showing Infogroup made these calls with a telemarketing purpose.

The TCPA telemarketing definition requires that the call or message have the purpose of "encouraging *the purchase or rental of, or investment in* property, goods, or services." 64 C.F.R. 64.1200(f)(12) (emphasis added). The content of Infogroup's calls to Schulz cannot establish this telemarketing purpose, as none of the calls contained any content. Schulz argues instead that the context surrounding Infogroup's calls establishes that they were made with a telemarketing purpose, focusing on two arguments: the calls were an attempt to gain Schulz's participation in Infogroup's Express Update program, and

---

[1] Schulz's response brief discusses at length "Defendant's Mutually Beneficial 'Express Update' calls." Pltf.'s Resp. 11 [25]. The amended complaint, however, states that these discussions of the Express Update program occurred when *Schulz* made calls to the Infogroup number that had contacted him — none of Infogroup's calls to Schulz discussed the program or any other content.

MEMORANDUM OPINION AND ORDER – PAGE 4

a "mutually beneficial exchange" occurs when Infogroup sells business contact information and those businesses benefit from updated business listings.

Neither of these points, taken as true, establish telemarketing purpose within the meaning of the TCPA. First, it is not clear that Infogroup's purpose in calling Schulz was to recruit him for the Express Update program. None of Infogroup's calls to Schulz mention this program, and Schulz heard of it only when he called the Infogroup number that contacted him. Because the TCPA specifically applies to calls initiated by defendants to residential telephone lines, not the inverse, messages Schulz heard when he affirmatively contacted Infogroup are not TCPA violations and can only provide context for Infogroup's calls to Schulz. *See* 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

Even assuming Infogroup's calls to Schulz were aimed at recruiting him for the Express Update program, this is not a telemarketing purpose. Express Update is free to business owners like Schulz. Schulz argues that TCPA violations may exist even if the communication at issue does not expressly mention a product or service or offers a free benefit. This is true, but only when context shows a telemarketing purpose underlying the call. The Second Circuit case Schulz cites held that a pharmaceutical company's fax invitation to physicians to a free dinner "discussing a subject related to the [defendant's] business" is sufficient to state a TCPA advertisement claim. *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 93–94 (2d Cir. 2017). A telemarketing purpose was plausible from the context in *Physicians*, however, as the free dinner featured presentations related to the defendant's business. In contrast, nothing suggests that the free

MEMORANDUM OPINION AND ORDER – PAGE 5

Express Update program served as a means of advertising to Schulz other Infogroup products or services for sale.

Second, it is true that Infogroup gathers contact information for businesses, like Schulz's chiropractor practice, and provides it to other entities for a profit. Schulz claims that this practice constitutes a "mutually beneficial exchange" — where valuable business information is exchanged for an updated business listing — and that the verification calls that effectuate this exchange thus have a telemarketing purpose. This argument rests on an expansive telemarketing definition unsupported by the text of section 64.1200(f)(12), which expressly covers only encouragements to purchase, rent, or invest.

Here, Infogroup markets its product, business contact information, to third parties — not the businesses whose contact information it gathers. *See Suttles v. Facebook, Inc.*, 2020 WL 2763383, at *2–*3 (W.D. Tex. 2020) ("A message does not qualify as a 'telephone solicitation' just because it may help a company sell advertisements to third-party businesses."). Nothing in the complaint suggests that Infogroup ultimately sought to sell or rent any service or product to Schulz or solicit an investment from him. Thus, even if Infogroup's calls were made with the purpose of furthering a beneficial transaction beneficial to both Infogroup and Schulz, this context still does not convey a *telemarketing* purpose. *See id.* (encouraging consumers to use websites to further defendant's advertisement sales to third-party businesses does not violate the TCPA); *Morris v. Unitedhealthcare Ins. Co.*, 2016 WL 7115973, at *8–*9 (E.D. Tex. 2016) (rejecting the argument that calls from an insurer to insured clients regarding free benefits, which might encourage commercially advantageous behavior such as client retention, violated the

MEMORANDUM OPINION AND ORDER – PAGE 6

TCPA); *Freyja v. Dun & Bradstreet, Inc.*, 2015 WL 6163590, at *2 (C.D. Cal. 2015) (finding no TCPA violation where the defendant sold business information it gathered during calls because the "regulation bans calls to sell property, goods, or services, not calls to acquire information").[2]  Thus, neither the content of the calls to Schulz nor any alleged context surrounding those calls plausibly suggest that they were made with a telemarketing purpose.

## CONCLUSION

Because Schulz has not pled facts sufficient to show that Infogroup's calls were made with a telemarketing purpose, the court grants Infogroup's motion [23] and dismisses Schulz's TCPA telemarketing claim.  Infogroup's motion for leave to file supplemental authority and brief [27] is moot.

Signed July 21, 2020.

_____
David C. Godbey
United States District Judge

---

[2] Although *Suttles*, *Morris*, and *Freyja* are telephone solicitation cases, the base definition of "solicitation" is identical to the "telemarketing" definition.  *See* 47 C.F.R. § 64.1200(f)(12), (f)(14).  The only distinction is that the solicitation definition contains three exceptions from its coverage that are not relevant here.  *Id.* at § 64.1200(f)(14)(i), (ii), (iii).

MEMORANDUM OPINION AND ORDER – PAGE 7